Case number 23-3044, United States of America v. Ronnard Williams Appellant, Ms. Schnoor for the Appellant, Mr. Andrews for the Appellant. Good morning, Ms. Schnoor. Good morning, Your Honors. May it please the Court, Mary Schnoor representing Defendant Appellant Ronnard Williams. In denying Mr. Williams' suppression motion, the District Court invented a novel and misguided exception to the Fourth Amendment, allowing a search of a vehicle's passenger compartment during any traffic stop where the vehicle's windows appear to be darkly tinted. And you say it's any traffic stop, not just one where you're approaching and it's going to be tenant windows, and so you'd perhaps like to see in, as the officer? And any traffic stop where the vehicle's windows appear to be darkly tinted, Your Honor. Yes, that's correct. Okay, so it is narrowed. It's not just any traffic stop. Not any traffic stop. Any traffic stop where the vehicle's windows appear to be darkly tinted. At the time Mr. Williams was ordered to roll all of his windows all the way down, the officers who began the traffic stop had found him to be totally compliant, had done nothing to suggest that they feared for their safety, and indeed, Sergeant Knisely testified that Mr. Williams had done nothing suspicious beyond the tint issue. The District Court's decision runs contrary to Michigan v. Long, where the Supreme Court made clear that a protective search of a car's interior is permissible only if based on reasonable suspicion that the vehicle's occupant is armed or dangerous. So Michigan v. Long, that was a different type of search. That was they went into the car. This is just visual inspection from the outside. And speaking of Michigan v. Long, under that case, couldn't they have done a protective search of this car based on reasonable suspicion that there was danger? So it's true that in Michigan v. Long, the officers did go inside the car. However, that does not mean that this was not a search. And under Katz, there was a reasonable expectation of privacy in the interior of the car, as the Supreme Court has said in Klaas and reaffirmed in Byrd. Klaas was also a case where they went into the car. I think there is some support for the idea that you don't have a reasonable expectation of privacy of visual inspection into a car, because when a lot of these cases were decided, cars weren't tinted generally. It was like an unusual thing to have tint. And the general rule is if you can just see something, you don't have a reasonable expectation of privacy in it. But it just seems to me that, do you agree that the officer could ask the driver to roll down the front window during a traffic stop? So we agree that the officer could ask the driver to roll down the window as necessary to facilitate communication and passing the license and registration. But isn't that a really de minimis next step, to roll down all the windows because all the windows are tinted? Because once you agree that one window can come down, the incremental difference between one and all seems pretty small. I don't think so, Your Honor. I think there is a big difference between ordering all of the windows rolled all the way down and just ordering them to stay down so that the police can shine the flashlights in. What's the big difference in legal terms? What test are you applying to suggest there's a big difference? So I think the intrusion is greater into the privacy interest. You're not intruding any more than you would already be able to view, because the windows were not illegally tinted. I don't think that's correct, Your Honor. On this record, the district court did not make a finding. So D.C. law allows rear windows to be tinted up to 50 percent. And at night, 50 percent is quite a dark tint. I don't think the police would have been able to see the gun in plain view had the car's windows been legally tinted. And here, moreover... But is that the standard we should be looking at, like what you can legally tint? I mean, that's just not a fact in this case. And you're assuming that everybody should have whatever protection they would have if their windows were 50 percent tinted. But what we have here is a different analysis if you look at MIMS and Maryland v. Wilson, which is you look at the government interest, which is the safety of the police officers, and you weigh that against the degree of intrusion, which is minimal, more minimal than what we had in MIMS and in Maryland v. Wilson. So it seems to me that the district court just applied that framework, that analysis, and this case was easier than Maryland v. Williams or MIMS because the intrusion was so minimal because it's just rolling down three more windows when you could roll down one. And the danger was greater because all of the cases that talk about danger and traffic stops, they don't involve tinted windows, which heightens the danger. So I would disagree, Your Honor, with the idea that the intrusion in MIMS and Wilson is greater than the intrusion here. I think it's a different type of intrusion. And so MIMS and Wilson, that just concerns a seizure. And the incremental additional intrusion is just whether you're sitting in the car during a traffic stop versus being asked to step out of the car. But that involves opening the car door, which gives you a view into the car, and then having people step out of the car. You think that is less intrusive than having people roll down additional windows when one is already rolled down? I think so, Your Honor. So the brief, it's true that someone has to open the door to step out of the car, but they can do so briefly. They can shut it behind them. And when it's open, you can look into it. That's true. That's true. But the police did not do that here. And the order here was to order all the windows down to expose the entire passenger compartment. But I would like you to be careful about what you're asking for, because this is what comes to my mind. Unfortunately, there's a lot of issues with police and persons of color. You ask a person of color to get out of the car, but before, they're taught to put their hands on the steering wheel. And then you ask them to get out of the car, and you relieve their hands. And then they're trying to get out of the car. Potentially, there could be a furtive movement just because they're nervous at that point. And then they could get out of the car, and then you don't know what else they're going to do. And I mention this because we had a case in South Carolina where the officer asked the gentleman at a gas station, go get your driver's license. That's what he did, and the officer shot him five times. And so I just would think you'd be a little careful about whether or not you want to push the law and be on the side of asking the person to get out, like that be the thing you request all the time. When you have the issue of somebody could be moving a little bit, the officer now has a heightened degree of safety, and that you're asking that to be the standard, that the officer should always ask the person to get out of the car, and then they could be moving, and then cause another whole issue. So I think it's true that traffic stops are always dangerous. They're dangerous for the officer. They may be very dangerous for the driver as well. There can be misunderstandings, and tragedy can result. But I don't think that that means that the police should always, whenever a window is starkly tinted, be allowed to order the windows rolled down. Now, if they had reasonable and articulable suspicion that an occupant of the car was dangerous, then of course, yes, they can search the passenger compartment. That's clear, and we don't dispute that. So you're agreeing to let it just be lowered just enough to, what, hand over a license or just to see the person? Yes, and that's sort of, so if you look at the facts of this case here, when the traffic stop began, Officer Laurie tapped on the window, Mr. Williams rolled his window down partially, and the traffic stopped again, and he was getting his license and registration. And it was not until the order to roll all the windows all the way down, including the back windows, that the officers were able to see inside and see the firearm. So that sort of supports that it was not possible for the police to see the gun here just because of that initial incremental window drop. So when Officer Laurie tapped on the window, the driver just rolled down the window a little bit. I watched the video of this, and the car is completely darkly tinted, and they weren't asking to roll down the window so they could search for evidence. It was an officer safety issue. They don't know how many people are in the car. It's night. The windows are darkly tinted. They're illegally tinted, so you can't see inside them. And it seems to me that the district court just was addressing the officer safety issue, and MIMS and Maryland v. Wilson support the idea that if you have a strong officer safety interest, reasonable suspicion isn't part of this analysis, because it's not reasonable suspicion to investigate the crime, to look for evidence. It's just to make sure the officers are safe, and it just seems to me that the logic of MIMS and Maryland v. Wilson applies very cleanly here, and this is a lesser intrusion and a greater risk to the officer in this situation. So I think in Maryland v. Wilson and in MIMS, the court was only addressing the incremental intrusion on the driver's personal liberty interest from remaining in the car during the traffic stop to stepping out. And MIMS and Wilson did not at all address the privacy interest in the interior of the car, and we think that interest is substantial. It's different than the interest at issue in MIMS and Wilson. And so the district court did not... It's true that there is an officer safety justification, but you also have to look at the privacy side of the balance. So why isn't this another way of looking at this, is during a tarry stop or a traffic stop, first of all, the officers are allowed to take complete control of the situation. That's in the case law. And also during such a stop, lots of things happen. Like Supreme Court has said, the officers could have a drug-sniffing dog come sniff your car, as long as it doesn't extend the stop. You can ask for license and registration, obviously. You can have them step out of the car. You can ask about things that are unrelated to the traffic stop. Do you have any guns or drugs in this car? You can do all kinds of things. Why isn't... Please roll down all your windows. Just another thing you can do during a traffic stop. I think because it is a search, and I'm not aware of any other case law holding that the police can do a search of the interior of the car. Well, there's the Texas versus Brown case that says you don't have a reasonable expectation of privacy in the passenger compartment of your car, or the visual inspection of the passenger compartment of your car, which means it wouldn't be a search. You don't have a... It's a plurality. Yes. So, if you can see something in plain view, you don't have a privacy interest in it, but the court has said you do have a reasonable expectation of privacy in the interior of your car to the extent something is not visible to the public. And given that... So, that kind of raises a whole different issue, which is interesting to me. It seems like a lot of these cases assume that you can look into a passenger compartment of the car. You know, they travel the streets. Everybody can look in and see who's driving usually, that kind of thing. And they kind of assume not tinted windows, that passenger compartments of cars are normally visibly open, you know, to the outside world. And in that world, it would seem that there would be a strong argument that this is not a search, because you have no expectation of privacy in a visual inspection of the inside of your car that you can see through your window. So, we cite multiple cases in our brief where other courts, and also this court actually in Brown, treated opening the door of a car with darkly tinted windows as a search. And I think that's because you have a privacy interest in the interior of your car. And that's true. And that's not going in, right? No, no. In Brown, the officer did not cross the plane of the vehicle. And that's true in Sandfield, too. The officer did not lean into the vehicle. And they upheld that. They said opening the door to look in was, in Brown. It was upheld. In Brown and in Sandfield, it was upheld, but it was upheld only after the court concluded that there was reasonable suspicion to support that search. Well, Sandfield said that a bright line rule was appropriate and also did that other analysis. But I did ask you, do you think that a protective frisk of this car would have been appropriate? In this case, on this record, no, I don't think there was reasonable suspicion to support a protective frisk of the car. So just officers come up, they're not feeling safe. All the windows are dark. When they ask to converse with the driver, he only opens his window a crack. So in Michigan versus Long, it seems like... The record here is not that the officers did not feel safe. And to the contrary, Sergeant Knisely testified that Mr. Williams had done nothing suspicious beyond the tip issue. Well, it's an objective standard. It doesn't matter if they subjectively felt safe or not. But you're approaching a car, you don't know who is in it, how many people, whether there's a gun in there or not. All the windows are darkly tinted. And when you try to converse with the driver, he only opens the window a crack. And then there was when the reasonable suspicion supposedly was created. So it's true that it's an objective standard, but I would submit that the experienced officer's subjective understanding is pretty probative of what the objective, reasonable police officer would have observed or believed under the circumstances. And then, moreover, as we argue in our reply brief, the government has... But if there were reasonable suspicion, they could frisk that car. If there were reasonable suspicion, yes. Which means they could require them to get out and then they could go into the car and look around. Well, they could ask them to get out regardless, even without reasonable suspicion. But yes, we agree that if there were reasonable suspicion, they could order the windows rolled down and inspect the car and do a protective frisk. That's correct. Well, I guess, are we ruling on that just requiring them to, when approaching a car because of the issue with respect to the dark tint, and you can't see, and that just having them roll down the window, that that in and of itself is not the search. That's not the viably invasiveness into their privacy interest, just rolling down the window. Or are you saying that it went a step further because then you're looking? I'm trying to figure out where you think the breach is. We think the order to roll all the windows down was a search. Okay. And why is that a search, just rolling down a window? Because it is an... It just seems to me that there has to be some further activity. So Your Honor, we believe it's a search because it intrudes into a space where there is a reasonable expectation of privacy. So would you be here if they had not looked in and saw the gun? Like you would just say, you can't do that? If they hadn't seen the gun, then I don't believe there would be a motion to suppress. So no, I don't think we would be here. No, but I'm just saying, I'm just trying to figure out that broader interest. Are you protecting against an officer not being able to ask that question, period, so that you never get to the next step? Or are you here just because they did get to the next step? Just absent reasonable suspicion, we don't believe that the officer should be able to order the windows rolled down. And that's because there's a reasonable expectation of privacy. And given that... At all, not even for the crack, to just hand over the driver's license and to see who's in the car. Not even that. Here, the order was to roll all the windows all the way down, and we're saying that's a search. Not the crack. If just the crack, no. Okay. That's correct. If they only rolled it down a crack, and then the officer said, roll it all the way down, would that be a violation? Ordered just the driver's window rolled all the way down? I think that would be a different case. That's not what we have here, where it was to order... I know that's a different case. That's a hypothetical. Were the windows ever rolled all the way down? Sorry? They were not, because the officers saw the gun before the rear windows had been rolled all the way down. I think... But then, that's what I'm getting at. I'm trying to figure out where you're thinking the breach is, because you're telling me, asking to roll them all the way down is what you hear about, but yet they were never rolled all the way down. It was a crack, and that's when they saw it. So even at the crack, they saw it there. Well, he was rolling down his rear windows only because he'd received that order. And I think, going back to your question, Judge Pan, I think that would be... I'm not sure that we would be arguing that if it was just the driver's window that that would be a search, because the driver's window, at least in D.C., it would depend on the totality of the circumstances, but in D.C., since the driver's window is not allowed to be as darkly tinted as the rear window, I think it's just a different analysis, but it would be under the totality of the circumstances. I think the problem with your argument is you just don't grapple with officer safety at all. You're talking past what the government and the district court did, because they were focused on officer safety. Officers can take reasonable steps to make sure that they're safe, and you're focused only on the acquisition of evidence or the investigation of crime, which is what reasonable articulable suspicion addresses. No. I think, Your Honor, we take the officer safety justification very seriously, and I don't want to minimize the officer. How often does that come into your analysis? So I guess on the officer safety side of the equation, if this court were to endorse the district court's rule, it would make a difference only in those cases where there's no reasonable and articulable suspicion. No, no. I'm just saying if we adopt your rule, your rule doesn't consider officer safety at all. Well, it does in the sense that under Mims and under Wilson and under Long, police have tried and true options for protecting themselves during a traffic stop. And so we're just saying- That doesn't include rolling down windows. It includes rolling down the windows if there's a reasonable suspicion, which is, again, a low bar, as the government says in their brief. I'll just try to put this more clearly. Your rule says we should always look to reasonable and articulable suspicion, that that is the lodestar. And that takes no account of officer safety. So we are arguing that under Long, reasonable suspicion is required. But even if you disagree with that, and you think there should be a balancing of the interests of the public safety interest versus the privacy interest- But you agree that your analysis takes no account of officer safety? We think that the privacy interest outweighs the public safety interest in this narrow case. But that's not a reasonable articulable suspicion standard, just to be clear. That would be if you disagree. We agree or we believe that reasonable suspicion should be required. But even if you disagree with that, we think that and we think that the privacy interest outweighs the public safety. But a partial roll down when you've been asked to roll down. Why isn't that then lead itself to reasonable suspicion that, OK, you only took it halfway down? Um, well, he was complying with the I think the question is whether the order here was a search or not. And he was complying with the order. And it's true that the police saw the gun before the window was rolled all the way down. OK, so then why isn't. But that goes back to earlier, I think you said rolling it down a little bit was OK. Um, I think what I said was that when there's a traffic stop, we acknowledge that the driver's window would need to be rolled down partially to facilitate communication and passing of the license and registration when it was rolled down partially. They saw the gun. No, Your Honor, the driver's window where I was talking about the driver's window before. But what allowed the gun to be seen was the rear window being pulled down. And if they had seen the gun through the partial roll down of a driver's window that was open on the command of the police, is that a different case? Yes, I think then that would be plain view. OK. Um, if the court has no further questions, we'd ask that the denial of Mr. Williams suppression motion be reversed. Thank you. We'll hear from Mr. Andrews. Good morning, and may it please the court. Peter Andrews for the United States. The officer's order here to roll down the blacked out, illegally tinted windows of Mr. Williams' car was a reasonable safety precaution that did not violate the Fourth Amendment. As this court has discussed with my colleague, traffic stops are dangerous, and the case has established that police officers are allowed to take reasonable safety precautions and need to take command of the situation when there's a traffic stop. OK, so the driver rose down the window partially. Police don't see anything at that time. Driver has submitted to your command, so then why go further? Because at that time, at least there's no testimony about officer safety. Your Honor, the police officers in that instance are not able to see anything in the car other than what they can see through the crack in the driver's side. And it's the driver who you're after, because the driver is driving the tinted car. But the police officer, I think, does not know whether there is anyone in the back seat. It turns out, of course, this is why this is important, turns out there is a person in the back seat they're not aware of, and that person has a loaded gun at their feet. And so the police officer- But we're trying to get at what you should do immediately, not what it turns out to be, and then back into the story. Yeah, the video makes clear this all does happen very fast. And I think when the officer approached the window, the window's rolled down just a crack. I think a reasonable way of looking at the video is he is not sure what's in that car, right? All you can see is the- She. She.  All you can see is the little crack of Mr. Williams's face. He's rolled down the window just a tiny bit, and otherwise the side windows are completely blacked out. Sunroof was open, right? I'm not sure about the sunroof. I can't see into the sunroof of a car when I'm just standing there. I don't think the officers could. The officers in that situation are faced with the question of how to take control of the situation. And it's reasonable under the Fourth Amendment to order the windows rolled down so they can see what's in the car. The analysis here is exactly what the Supreme Court proved in MIMS, where we are balancing the danger to the officers against the privacy interest. The danger to the officers is apparent in traffic stops. Both the officers and Judge Child's question about people of color earlier, I think it's dangerous to civilians, too, when police officers don't know what's in the car. Civilians don't know how police officers are going to react to them. So there is a serious danger issue when approaching a blacked out tinted window car. Can I ask you about that? Are you aware of statistical evidence that the ratios of fatal police shootings per arrests or stops differs between racial groups? I am not aware of any statistical evidence on that point about racial groups, Your Honor. What we're relying on for the dangerousness of traffic stops is the statistics that are cited in cases from this circuit and from cases like Stanfield that talk about the danger of traffic stops generally. As to racial groups, I was specifically trying to acknowledge Judge Child's question, but I don't have any statistical evidence about different impact on racial groups. From the Department of Justice's perspective, you do not have the impression that ratios of fatal police shootings per arrests or stops differs between racial groups. I don't have statistics on that either way, Judge Walker. How should we think about the degree of the tint on the car? It seems to me in this case, it's a little easier, it's a legally tinted, very dark car. What if it was just a legal amount of tint, but the officers still couldn't see? Could they still order the windows to go down? That is a more difficult question. I think you're right. I think the threshold question is, do the officers have probable cause in that circumstance to begin a window tint stop? So the officers have, in that circumstance, if the officers have- But what if they're stopping them for a different reason? It's the parking violation in this case too. So if it's a situation where the officers can't see into the car, then there is a very elevated safety interest. There may be a greater privacy interest, because if a person is compliant with DC's regulations about how to see in a car, there is a stronger argument that they have a reasonable expectation of privacy in the car. What if there's no tint on the car, but there's a glare, so they can't see in the car? Because there's something shining off the window. Can they make them lower the windows? So I think glare is a more difficult question, because I think the police can take steps to mitigate glare. I do think that this is a fact-intensive question. Mr. Williams has kind of framed this as the district court has adopted a bright line. We don't read it as a bright line rule, and this court doesn't need to adopt it. Shouldn't your position be that police officers can take reasonable steps to protect their safety, and if they can't see in the window, whether it's because it's minimally tinted, but it's dark, or there's a glare, they should be allowed to do that? I think that that is right. The officers need to take steps to protect their safety in circumstances where, in the automobile context, drivers have a less than reasonable expectation of privacy in the visible passenger interior of their car. So in almost every circumstance, when you weigh the officer's safety interest versus the privacy interest, it's going to come out in favor of the officers. And I had earlier asked your opposing counsel about, essentially, how far do we take this? Is this a window tint case, or is this for any police traffic stop that you could allow a person to roll down their windows? So I think Judge Pan articulated it well. It's a situation in which the police are unable to see what's in the passenger compartment, where they're unable to determine whether or not who's in the car, and whether or not who's in the car presents a danger to them. Because that's specifically what we're focusing on here, is do these people exist at all, and do they present any danger to... But we could decide that question as a bright-line rule, like in VIMS and in Merlin v. Wilson, or we can just say, under the circumstances of this case, it was reasonable for them to order the windows to go down. So should we do a bright-line rule, like in VIMS and Wilson, or should we just say, oh, in the facts of a case like this, that was reasonable? So we've, in our brief, argued that you can rule on this simply as, under the facts of the case, this is reasonable. I think a bright-line rule would look very similar to a rule that, in most reasonable circumstances when police approach a car, that they are allowed to order the windows rolled down. So I don't think there's anything inconsistent with adopting a bright-line rule. As the Fourth Circuit was talking about in Stanfield, the Fourth Circuit absolutely reached the conclusion that a bright-line rule would be appropriate. But you can also write an opinion that says, under these circumstances, it was a reasonable safety precaution. So the reasons, bright-line rules are generally disfavored, but the reasons to do a bright-line rule is they provide certainty for police officers engaged in the competitive enterprise of ferreting out crime so that they know that I can do this without thinking about it, overthinking it in the moment. And is that a factor that weighs in favor of a bright-line rule in this situation? Certainly from a law enforcement perspective, more clarity about what law enforcement can do in any situation is welcomed. But as you indicate, there's also case law illustrating or indicating that bright-line rules are generally disfavored. So either of those rulings are consistent with the logic that we put forward in our brief and that we think is supported by the Supreme Court's case law in this area. One of our cases mentions that every year 6,000 officers are assaulted during car stops. Should that be a factor in whether we do a bright-line rule or whether we do this as a case-by-case, make the officers think hard about it, double-check twice, dot their I's, T's? Certainly, the officer safety interest in these cases is very significant, as these cases indicate. And so a bright-line rule does have benefits in terms of allowing officers to understand very clearly when they approach a car what they are and are not allowed to do. Was this a search? I mean, I know once they reached into the car, but the order to roll down the windows, was that a search? No. And what's your argument for that? So it's not a search for a few reasons. One is that, as we've talked about, MIMS and its progeny talk about these kinds of protective measures as interactions with a person's privacy that don't require reasonable suspicion like a search typically does. But beyond that... But the definition of a search is an invasion of a reasonable expectation of privacy. So for this not to be a search, you would have to say there is no reasonable expectation of privacy in the passenger compartment of the car for a visual inspection. That's right, Judge Pan. So our position is not that there's no reasonable expectation of privacy, but that there is a substantially lessened reasonable expectation of privacy in the passenger compartment of   Is there a case that says if there's a lesser interest, there's no search? I thought you had to have no reasonable expectation of privacy for there to be no search. So if you look at class, my reading of class is that class does not... Ultimately, they bless the search in class without... They call it a search, but then they say reasonable suspicion wasn't required because the VIN is required to be in a place that's in public view and because of the lessened reasonable expectation of privacy in the VIN because of its placement within the passenger compartment. So the way to think about this is in the safety precautions context, we're balancing officer safety with expectation of privacy. There's a substantially lessened expectation of privacy in the interior of a car because it's supposed to be something that under... But class said that there is an expectation of privacy in the interior of the car. But under the facts of that case, because the VIN was obscured and it's intended to be visible from the outside, it was okay for the police officers to go in and move some papers to unobscure the VIN. That's very different, but they did say that there is an expectation of privacy in the passenger compartment of the car. There is some expectation of privacy. It's how to read class and its progeny and cases like Texas v. Brown, it says. And if there is some expectation of privacy, it's a search. So I would say it's not a search because we're in reasonable safety precaution land, but if it is a search because we're in reasonable safety precaution land, it doesn't... That's just a different analytical framework. Sure. Something that's a search is different from this balancing test that's in... So Judge Pan, whether it's a search or not, our position is that reasonable suspicion is not required to... If there are any further questions, we'd ask that Mr. Williams' conviction and sentence be affirmed. Thank you. Thank you. Commissioner Orr, we'll do two minutes of rebuttal. Thank you, Your Honor. First, going to Judge Pan, your question to the government, I would like to emphasize that the rule here affects the privacy interests of people who are driving legally tinted cars. The government has just confirmed that. And that's because the search would be allowed so long as the officer was not believed that the windows were darkly tinted and was having difficulty seeing in. And that could very well be the case with legally tinted windows. My question on that, though, is, does it matter whether it's legal or illegally tinted if the officer can't see? Because if the interest that we're trying to promote or protect here is officer safety, if they can't see, they can't see. It doesn't matter if this is a legal tint or a legal tint. It's dark. They can't see. Should they not be allowed to lower the windows? I think you're right that the officer safety interest is the same there, as you said. If they can't see in, they can't see in. But the point is that this is not just about people who are violating the window tint regulations. It's also about people whose cars are perfectly legal who have a reasonable expectation in their rear seat being somewhat shielded from public view. Not entirely, but maybe enough for them to feel comfortable, for example, changing clothes, breastfeeding a baby, carrying something that they might not want exposed to public view. And so this rule would allow the police, regardless of any suspicion, to order them to roll all those windows down. Second, going to Judge Childs, your question about the partial roll down, I would just like to note that courts have recognized that merely withholding consent to a search does not create reasonable suspicion. We cite cases at page 20 to 21 of our brief. So to the extent Mr. Williams rolled his window down partially and not entirely, that would not create reasonable suspicion. And I would also note that in the record here, the police could see through the untinted windshield and through the sunroof. And so the record is that Sergeant Knisely could see that there was a passenger in the back seat before the windows were rolled down. So it wasn't that it was entirely impossible for them to see inside the car. If the officers had ordered everyone out of the car, that would have been legal, correct? Yes, your honor. So if you can order everyone out of the car, why can't you order the windows to be rolled down when, number one, it seems less invasive to roll down your windows as opposed to come out of the car? And number two, to Judge Childs' question, it seems safer both to the officers and to the passengers. Excuse me, sorry. So we think it's differently invasive, again, because... You think it's more invasive? I think it's just different interests. As the Ninth Circuit said in New Mesey... Again, that it's different, but something can be different because it's less invasive and something can be different because it's more invasive. And I suppose something can be different in an equally invasive way. Which of those do you think it is? I think it really probably depends on the precise circumstances. And for someone who might have difficulty getting out of the car, like an elderly person who was having difficulty moving, it might be more invasive to ask them to step out of the car. But if you have something in the backseat that you don't want everyone on the street to see, it might be more invasive to have the windows rolled down than to simply step out of the car. So I think it really depends on the circumstances and they're just different interests. It's a liberty interest versus a privacy interest. I'm thinking about your backseat example. I mean, under MIMS, can you order someone to get out of the car and leave their door open after they get out? I don't believe a court has held that. I think if someone chose to leave their door open, then there would still be plain view. But no, I don't think they're being detained. It's not a full arrest. I get that. But they're being detained. So it seems a little odd to say that while you're being detained, you're free to close your car door if you want to. I think you are free to close the car door because MIMS didn't. Yeah, just MIMS is only about asking someone to step out. So, yeah. So police cannot search the car just because they can order someone out of the car. Maybe so. Thanks for helping me think through questions. I know I took up some of your rebuttal. If you want to take another 10 or 15 seconds. Well, I would just to sum up, allowing discretionary searches of a vehicle's passenger compartment during any traffic stop where a vehicle's windows appear to be darkly tinted would inappropriately extend MIMS and intrude substantially on individual privacy interests. So we would therefore ask this court to reverse the denial of Mr. Williams' suppression motion.
judges: Walker; Childs; Pan